2004 WY 88

**CHEYENNE PUBLISHING, LLC a Wyoming Limited Liability Company; and Larry and Nancy Lovelass as individuals, Appellants (Plaintiffs),**

v.

**Ardith STAROSTKA, Appellee (Defendant).**

No. 03–168.

Supreme Court of Wyoming.

July 23, 2004.

Representing Appellants: Guy Patrick Cleveland, Cheyenne, Wyoming.

Representing Appellee: William K. Rounsborg of White and Steele, PC., Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] Appellants, Cheyenne Publishing, LLC, and Larry and Nancy Lovelass (collectively Cheyenne Publishing), filed a complaint seeking damages from Appellee, Ardith Starostka (Starostka) for defamation, intentional interference with contract, and interference with prospective contractual advantage. The district court granted Starostka's motion to dismiss the complaint on the basis that it lacked personal jurisdiction over Starostka. Starostka is a resident of Nebraska, and it is conceded that she did not physically set foot in Wyoming as it pertains to this litigation. Nonetheless, Cheyenne Publishing contends that the district court

did not apply the proper test for personal jurisdiction and that Starostka's acts, which had an effect on Cheyenne Publishing in Wyoming, were sufficient to confer personal jurisdiction on the district court. We will affirm the district court's order.

## ISSUES

[¶ 2] Cheyenne Publishing describes this set of issues:

I. Whether the trial court erred by ordering a dismissal based on personal jurisdiction.

A. Whether [Starostka's] action caused important consequences to [sic] this state, therefore when analyzing personal jurisdiction the district court erred when it applied the purposeful availment standard.

B. Whether the cause of action did arise from the consequences in this state.

C. Whether the consequences of [Starostka's] actions have a substantial enough connection with this state to make the exercise of jurisdiction over [her] reasonable.

Starostka sets forth her understanding of the issue quite simply: "Did [Cheyenne Publishing] meet [its] burden of establishing the requisite minimum contacts for the trial court to exercise jurisdiction over [Starostka]."

## JURISDICTIONAL FACTS AND PROCEEDINGS

[¶ 3] On January 7, 2003, Cheyenne Publishing filed a complaint in the district court. In that complaint it is alleged that Cheyenne Publishing is a limited liability company registered and doing business in Wyoming, and that its owners, Larry and Nancy Lovelass, are residents domiciled in Wyoming. Cheyenne Publishing conceded that Starostka is a resident of Nebraska. Cheyenne Publishing asserted that the district court had jurisdiction as provided in Wyo. Const. Art 5, § 10.[1]

---

1. **§ 10. District courts generally; jurisdiction.**
 The district court shall have original jurisdiction of all causes both at law and in equity and in all criminal cases, of all matters of probate and insolvency and of such special cases and proceedings as are not otherwise provided for. The district court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; and said court shall have the power of naturalization and to issue papers therefor. They shall have such ap-

It also alleged that the complaint was filed within the applicable statute of limitations. Wyo. Stat. Ann. § 1–3–105(a)(v)(A) (libel or slander) (LexisNexis 2003). Cheyenne Publishing alleged that Starostka had certain minimum contacts with Wyoming so as to permit personal jurisdiction.[2] These circumstances were enumerated in the complaint:

a) [Starostka] purposefully availing herself of acting in this State as well as directing her activities toward this State and residents of this State and/or ... caused important consequences in this State by such activities;

b) the alleged causes of action set forth below arise from [Starostka's] activities and consequences in this State; and

c) [Starostka's] activities and consequences of those activities have a substantial connection with this State and this State's exercise of jurisdiction over [her] is reasonable.

[¶ 4] Cheyenne Publishing asserted that Starostka entered into a written agreement with Cheyenne Publishing to the effect that Cheyenne Publishing agreed to publish a catalogue that featured, inter alia, Starostka's artwork.[3] Starostka paid Cheyenne Publishing for its services, and Cheyenne Publishing claimed it performed the services set forth in the agreement.[4] Cheyenne Publishing contended that Starostka "has contacted and continues to contact numerous individuals, businesses, and agencies in this State and other states via e-mail, internet, telephone and written correspondence in regards to the above agreement and in general about plaintiffs Cheyenne Publishing and Larry and Nancy Lovelass." As a result of Starostka's alleged activities, Cheyenne Publishing contended that it had been defamed, that its contracts with others were interfered with, and that its prospective contractual relationships with others were damaged. The complaint was served on Starostka at her home in Columbus, Nebraska, on January 20, 2003.

[¶ 5] On February 19, 2003, Starostka filed a motion to dismiss the complaint for lack of personal jurisdiction. In support of her motion to dismiss, she filed an affidavit with the court that included these assertions:

2. With respect to the allegations contained in the Complaint, and the underlying relationship between the Plaintiffs and me, the first contact I had with any Plaintiff was a telephone call from Nancy Lovelass to me at my home in Columbus, Nebraska.

3. Prior to that phone call, I had never heard of Cheyenne Publishing, LLC, Larry Lovelass, Nancy Lovelass, or the *Art Buyers Guide* published by the Plaintiffs.

4. In that phone call, Nancy Lovelass offered to sell space in a planned *Art Buyers Guide, Volume IX, featuring Nebraska artists,* and during that phone call I rejected the solicitation.

5. My next contact with any of the Plaintiffs was a second phone call from Nancy Lovelass to my home in Columbus, Nebraska, again soliciting my purchase of space in the proposed *Art Buyers Guide, Volume IX, featuring Nebraska artists.* I again advised Nancy Lovelass that I was not interested as I did not have the time, and Nancy assured me that Larry Lovelass would stop by my house and take up no more than 30 minutes of my time. I then agreed to meet with Plaintiff Larry

pellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law. Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, injunction and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective districts.

**2. § 5–1–107. Personal jurisdiction; service of process outside state.**

(a) A Wyoming court may exercise jurisdiction on any basis not inconsistent with the Wyoming or United States constitution.

(b) When the exercise of personal jurisdiction is authorized by this section, service may be made outside this state and proved according to the Wyoming Rules of Civil Procedure or any order of the court.

**3.** Although there is no real dispute that the parties entered into such an agreement, the agreement itself is not in the record.

**4.** Because the agreement is not in the record, its terms are uncertain from our perspective.

Lovelass at my home in Columbus, Nebraska.

6. My next contact with any of the Plaintiffs was a visit by Larry Lovelass to my home in Columbus, Nebraska, at which time I agreed to purchase space in the Plaintiffs' proposed *Art Buyers Guide, Volume IX, featuring Nebraska artists.*

7. I never traveled to Wyoming for any purpose related to my purchase of space in the *Art Buyers Guide, Volume IX, featuring Nebraska artists.*

8. When problems or questions arose, I contacted or attempted to contact Plaintiffs by way of a toll-free number, and, on at least two occasions, return phone calls to me from Plaintiffs originated from Arizona.

9. I have had discussions with other artists concerning Plaintiffs; however, those artists were from Nebraska, Oklahoma, Arizona, and Montana. I have had no communication with any artist, gallery, or art dealer in Wyoming. Of my contacts with artists in states other than Wyoming, certain of those contacts were initiated by the Plaintiffs and others were initiated by the other artists.

10. The only time I ever sold art in Wyoming was when I was a teenager, in the late 1970's; I sold one painting at that time.

11. I have received no contact from any interested party, other artists, art dealer, or gallery in Wyoming, either as a result of the appearance of my work in the *Art Buyers Guide, Volume IX, featuring Nebraska artists,* or otherwise.

12. My only communications or contacts with persons in the state of Wyoming, other than the telephone calls to the Plaintiffs, are as follows:

a. I wrote to Plaintiffs on June 5, 2002, and a copy of that letter is attached hereto as Exhibit A.

b. Upon the request of another artist outside the state of Wyoming, I contacted the Wyoming Attorney General's office to register a complaint of my concerns with what I believed to be misrepresentations by the Plaintiffs as to publication circulation of the *Art Buyers Guide, Volume IX, featuring Nebraska artists.*[5]

c. I contacted my local postmaster to request assistance in determining the number of mailings by Plaintiffs of the *Art Buyers Guide, Volume IX, featuring Nebraska artists,* and I understand my postmaster contacted the Cheyenne, Wyoming, postmaster to inquire into that issue.

13. I contacted the Mountain States Better Business Bureau to complain about my experiences with the Plaintiffs, but contacted that office in Fort Collins, Colorado; it is my understanding that the Mountain States Better Business Bureau, through its procedures, contacted Plaintiffs by letter.

14. I contacted Plaintiff's printer to inquire concerning the number of copies of the *Art Buyers Guide, Volume IX, featuring Nebraska artists* that were printed for Plaintiffs, but that printer is located in Tulsa, Oklahoma.

15. I provided materials for inclusion in the *Art Buyers Guide* to Plaintiffs, who I understand reside and conduct business in Wyoming.

16. Other than as set out above, I have had no communications with Plaintiffs or others concerning my dispute with the Plaintiffs over the publication of the *Art Buyers Guide, Volume IX, featuring Nebraska artists,* and I have otherwise had absolutely no contacts with the state of Wyoming.

[¶ 6] In a letter dated June 5, 2002 (the exhibit A mentioned above), Starostka communicated this to Cheyenne Publishing:

I am writing this letter to inform you of my demands as an advertising artist in the *Art Buyers Guide, Volume IX, featuring Nebraska artists.* I give you the option of meeting these demands by June 12, 2002 by 5:00 p.m. (cst).

---

5. Cheyenne Publishing did not further develop the purport of this call with respect to its effect on personal jurisdiction, and the district court found that it was not asserted in argument as the basis of any claim and that it was potentially "privileged." Because this was not fleshed out below we do not further consider it here.

1. Cheyenne Publishing, LLC, is to provide me with a postal report and receipt to verify that the *Art Buyers Guide, Volume IX, featuring Nebraska artists* was distributed in May, 2002 from Cheyenne, Wyoming, as specified via my phone conversation with Nancy Lovelass on June 4, 2002, 11:00 a.m. (cst).

2. If a postal report and receipt are not provided to me to verify that the "Art Buyers Guide", Volume IX, the Nebraska edition was distributed in May, 2002 from Cheyenne, Wyoming, I demand the return of my money for the $1995.00 plus $165.00 that was paid for the publication and the distribution service.

[¶ 7] On March 10, 2003, Cheyenne Publishing filed a response to the motion to dismiss asserting that its complaint was sufficient, "[h]owever, there are additional jurisdictional facts that can and need to be developed via the discovery process." Cheyenne Publishing asked that the district court deny the motion to dismiss or, in the alternative, grant further time to conduct discovery. Both sides submitted written arguments to the district court, and by order entered on April 25, 2003, the motion to dismiss was set for hearing on May 22, 2003. Cheyenne Publishing's traverse to the motion to dismiss included a copy of a letter it sent to Starostka under the date of August 9, 2002:

The purpose of this letter is to follow-up on our conversation of July 18, 2002 regarding your dispute with my client, Cheyenne Publishing, LLC.

My goal was to try to resolve what at best was a consumer complaint. I informed you that I wanted to avoid an adversarial dispute as the cost of litigation alone would shadow any money at dispute. I understood that you would at least give compromise a chance; however, your behavior since our conversation indicates compromise is your last wish.

Initially, I indicated that your actions of contacting other artists, publishers, and print shops might be considered defamatory. Since our conversation, you have contacted additional individuals and businesses, and in some instances, you have misrepresented yourself in order to obtain information. Such acts are irrational in light of the alleged dispute. In short, you destroyed any hope of compromise and have crossed the line into defamation.

I attempted to warn you of the consequences of your actions. My last bit of advice is for you to seek legal counsel. You shall immediately cease and desist your injurious actions or be held accountable.

[¶ 8] On May 7, 2003, Larry Lovelass submitted an affidavit enumerating 17 entities or individuals that had received copies of the disputed art guide. He did not contest any of the assertions made by Starostka in her affidavit.

[¶ 9] The district court conducted a 30-minute hearing on May 22, 2003. At the hearing counsel for the parties presented argument, but no evidence was adduced or taken by the district court. Counsel for Cheyenne Publishing did concede that Starostka had not come to Wyoming. Counsel for Cheyenne Publishing also conceded that although it was its contention that Starostka had called into Wyoming on three or four occasions with respect to this dispute, it did not get that "fact" reduced to an affidavit. Cheyenne Publishing also conceded that the phone calls or other contacts with third parties that were alleged to be defamatory, or otherwise adversely affected its contractual or business interests, were made from Nebraska to persons in states other than Wyoming, but that none were made to Wyoming. The only direct contacts alleged by Cheyenne Publishing were calls she made to Cheyenne Publishing itself, and the fact that she mailed the materials for publication to Cheyenne Publishing in Wyoming. Counsel for Cheyenne Publishing also conceded that its case against Starostka depended upon the theory that her actions in Nebraska had "consequences" in Wyoming, vis-à-vis Cheyenne Publishing, and that was sufficient to invest Wyoming courts with personal jurisdiction over Starostka.

## STANDARD OF REVIEW

[¶ 10] The applicable standard of review is this:

The question of in personam jurisdiction is a mixed question of law and fact that, if disputed, must be resolved before a matter can proceed. *Citibank, N.A. v. Estate of Simpson,* 290 N.J.Super. 519, 676 A.2d 172, 178 (1996). The district court has considerable leeway in deciding a pretrial motion to dismiss for lack of personal jurisdiction. *PanAmerican Mineral Svcs., Inc. v. KLS Enviro Resources, Inc.,* 916 P.2d 986, 989 (Wyo.1996). The court may determine the matter on the basis of pleadings and other materials called to its attention; it may require discovery; or it may conduct an evidentiary hearing. *Id.* The procedural path the district court chooses to follow determines the plaintiff's burden of proof and the standard to be applied on appeal.

When the underlying facts are undisputed, the existence of personal jurisdiction is a matter of law. *Eddy v. Oukrop,* 784 P.2d 610, 612 (Wyo.1989). If the district court's determination is made without an evidentiary hearing, the plaintiff must show only a prima facie case to defeat the motion to dismiss. *Robinson v. U–Haul Intern., Inc.,* 929 P.2d 1236, 1238 (Wyo.1997) (*quoting PanAmerican Mineral Services, Inc. v. KLS Enviro Resources, Inc.,* 916 P.2d 986, 989 (Wyo.1996)); *Amoco Production Co. v. EM Nominee Partnership Co.,* 886 P.2d 265, 267 (Wyo.1994). The district court must view the allegations in the pleadings and documentary evidence in the light most favorable to the non-moving party, resolving all reasonable inferences in favor of the non-moving party. *Pelchat v. Sterilite Corp.,* 931 F.Supp. 939, 943 (D.N.H.1996); *Neways, Inc. v. McCausland,* 950 P.2d 420, 422 (Utah 1997).

When material factual allegations regarding jurisdiction in the affidavits cannot be harmonized, the district court should hold an evidentiary hearing to determine the issue of jurisdiction. *Standard Tallow Corp. v. Jowdy,* 190 Conn. 48, 56, 459 A.2d 503, 507–08 (1983); *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 503 (Fla.1989); *Neways, Inc.,* 950 P.2d at 422. Once an evidentiary hearing is held, however, we will defer to the district court's findings of fact and the plaintiff will succeed upon

showing, by a preponderance of the evidence, that the defendant is subject to jurisdiction. *Goodwin v. Hall,* 957 P.2d 1299, 1301 (Wyo.1998); *O'Bryan,* 952 P.2d at 638; *Robinson,* 929 P.2d at 1238; *PanAmerican Mineral Services, Inc.,* 916 P.2d at 989. No matter the procedural course charted, however, the ultimate question of whether personal jurisdiction can properly be exercised is a question of law to be reviewed de novo. *O'Bryan,* 952 P.2d at 638.

*Shaw v. Smith,* 964 P.2d 428, 432–33 (Wyo. 1998).

 [¶ 11] That preliminary articulation of the applicable law is supplemented by this more expansive discussion of the applicable standard:

The issue of in personam jurisdiction, if disputed, must be resolved before a case may proceed. *O'Bryan v. McDonald,* 952 P.2d 636, 638 (Wyo.1998). When the district court holds an evidentiary hearing on the merits of a motion to dismiss alleging lack of in personam jurisdiction, the plaintiff must demonstrate personal jurisdiction is proper by a preponderance of the evidence. *Id.* The ultimate question of whether personal jurisdiction may properly be exercised is a question of law, which we review de novo. *Id.* In its decision letter the district court, accepting the facts alleged in the complaint as true and viewing the allegations in the light most favorable to the plaintiff, determined it did not have personal jurisdiction over Hall as a matter of law.

Wyoming courts are authorized to exercise personal jurisdiction over a defendant on any basis which is not inconsistent with the Wyoming or United States constitutions. WYO. STAT. § 5–1–107(a) (1997). The due process clause found in the Fourteenth Amendment of the United States Constitution limits the jurisdiction of state courts over the person of nonresident defendants. *O'Bryan,* 952 P.2d at 638. Generally, due process requires that a defendant have contacts with the state such that exercise of jurisdiction does not offend " 'traditional notions of fair play and substantial justice.' " *Id.* at 639 (quoting

*Markby v. St. Anthony Hosp. Sys.*, 647 P.2d 1068, 1071 (Wyo.1982), which quotes *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). We have held that the defendant must have at least minimum contacts with the forum state to satisfy the due process standard. *Markby*, 647 P.2d at 1072–73.

In her brief, Goodwin summarizes her position and urges us to apply a two-step jurisdictional analysis to her situation. She suggests that we adopt a position that "[w]ith respect to all matters relative to his or her child, a parent is subject to personal jurisdiction in the state where the child resides." We have recently had occasion to examine this issue in a similar case, *O'Bryan v. McDonald*, 952 P.2d 636 (Wyo. 1998). In *O'Bryan* we declined to find the father purposefully availed himself of the privilege of acting in Wyoming by voluntarily entering into a contract concerning child support and partially performing that contract in the state. *Id.* at 640. Finding solace in both our own and the United States Supreme Court's time-honored three-step analysis of in personam jurisdiction questions, we will decline to follow Goodwin's recommendation and decline to find personal jurisdiction in this case as well.

No issue of general jurisdiction of Wyoming courts with respect to Hall is present in this case. Goodwin does not allege "continuous and systematic" contact by Hall with the State of Wyoming. In *O'Bryan*, we reiterated our long-standing three-part test which defines the outer limits of personal jurisdiction based on a single act:

1) the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state, 2) the cause of action must arise from the consequences in the forum state of the defendant's activities, and 3) the activities of the defendant or the consequences of those

activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable.

*O'Bryan*, 952 P.2d at 639 (citing *Amoco Prod. Co. v. EM Nominee Partnership Co.*, 886 P.2d 265, 267 (Wyo.1994)); *see also First Wyoming Bank, N.A., Rawlins v. Trans Mountain Sales and Leasing, Inc.*, 602 P.2d 1219, 1221 (Wyo.1979).

Purposeful availment is a threshold requirement meant to ensure " 'that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.' " *O'Bryan*, 952 P.2d at 639 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). Unless the purposeful availment requirement is satisfied, the court will not have personal jurisdiction over the nonresident "no matter how strong the interest of the plaintiff or the forum state may be in having the suit adjudicated there." *O'Bryan*, 952 P.2d at 639 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294, 100 S.Ct. 559, 565–66, 62 L.Ed.2d 490 (1980)); 1 Robert C. Casad, Jurisdiction in Civil Actions § 2.05 (2d ed.1991).

*Goodwin v. Hall*, 957 P.2d 1299, 1301–2 (Wyo.1998).

[¶ 12] Other analytical tools, in the rather large constellation of such tools [6] available to courts for use in resolving issues relating to personal jurisdiction, are set out in *Amoco v. EM Nominee Partnership Company*, 886 P.2d 265, 267–68 (Wyo.1994):

The courts of Wyoming are authorized by statute to exercise personal jurisdiction over defendants on any basis which is not inconsistent with the Wyoming or United States constitutions. W.S. 5–1–107(a) (1977). So long as the exercise of jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the courts of this state have jurisdiction over a defendant. *Markby v. St. Anthony Hosp. Sys.*, 647 P.2d 1068, 1070 (Wyo.1982).

---

6. For a more complete articulation of these analytic tools *see* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 3d*

§§ 1063–1068 at 325–591 (2002 and Pocket Part 2003).

Due process requires that the defendant have certain "minimum contacts" with the forum state such that the exercise of jurisdiction over him does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Markby,* 647 P.2d at 1070. In *First Wyoming Bank, N.A., Rawlins v. Trans Mountain Sales & Leasing, Inc.,* we adopted a three-part test for defining the outer limits of personal jurisdiction based on a single act:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

602 P.2d 1219, 1221 (Wyo.1979) (quoting *State ex rel. White Lumber Sales, Inc. v. Sulmonetti,* 252 Or. 121, 448 P.2d 571, 574 (1968)); see also *Markby,* 647 P.2d at 1073. The determination of whether the exercise of jurisdiction is reasonable must be evaluated in light of several factors, including the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining effective relief in a convenient forum if that interest cannot be adequately protected by his power to select the forum, the interstate judicial system's interest in the efficient resolution of conflicts, and in the shared interests of the states in furthering fundamental substantive social policies. *Markby,* 647 P.2d at 1073 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)); see also *Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 113–14, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required" if the defendant has purposefully availed himself of the privilege of acting in the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).

The burden is on the plaintiff, once the defendant has contested the court's jurisdiction over him, to make a prima facie showing that the defendant is subject to personal jurisdiction in the state. *McAvoy v. Dist. Court,* 757 P.2d 633, 634 (Colo. 1988); *Allen v. Columbia Financial Management, Ltd.,* 297 S.C. 481, 377 S.E.2d 352, 354 (S.C.App.1988); see *Morrison v. Reilly,* 511 P.2d 970, 972 (Wyo.1973) (burden of proof is on party asserting affirmative of any issue). The court may consider any allegations set forth in the complaint and any evidence which may be introduced in a hearing on the issue. *McAvoy,* 757 P.2d at 634–35. The defendant then must present a compelling case that the presence of some other considerations would make the exercise of jurisdiction unreasonable. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184–85.

The United States Supreme Court has distinguished between "general" and "specific" personal jurisdiction. "Specific" jurisdiction is when a state exercises jurisdiction over a defendant in a suit arising out of or related to that defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872, n. 8, 80 L.Ed.2d 404 (1984); see *Eddy v. Oukrop,* 784 P.2d 610, 612–14 (Wyo.1989) (jurisdiction exercised over defendants because suit arose out of defendants' contacts with Wyoming). In contrast, "general" jurisdiction is when a state exercises jurisdiction over the defendant in a suit not arising out of or related to that defendant's contacts with the state. *Helicopteros Nacionales,* 466 U.S. at 414 n. 9, 104 S.Ct. at 1872; see *Markby,* 647 P.2d at 1074 (defendant's contacts with the state not sufficient to create personal jurisdiction in Wyoming where defendant's contacts with the state were not related to the suit). Even if a single act arises out of or is related to the suit, a

state may not have jurisdiction if the nature of the act creates only an "attenuated" connection with the forum. *Burger King,* 471 U.S. at 475 n. 18, 105 S.Ct. at 2184 n. 8.

*Also see Anderson v. Perry,* 667 P.2d 1155, 1157–58 . (Wyo.1983) ("The balancing of factors necessary to find personal jurisdiction must consider the kind of activities involving the defendant as well as the degree. Contractual agreements generally establish a clear voluntary assent."); and *Markby v. St. Anthony Hospital Systems,* 647 P.2d 1068, 1070–74 (Wyo.1982) (special "fairness" considerations are a factor in the analysis of personal jurisdiction cases).

[¶ 13] Continuing our consideration of the standard of review to be applied here, we take note of this discussion from 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 3d* § 1067.6 at 523–67 (2002 and Pocket Part 2003):

Motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil procedure 12(b)(2) raise several significant procedural questions that must be considered by the attorneys and the district court. In this regard, one of the more interesting aspects of Burger King Corporation v. Rudzewicz is Justice Brennan's suggestion at several points in the opinion for the Court that some burden falls on the defendant who is seeking to dismiss the action to persuade the court that the assertion of personal jurisdiction over the defendant would be unreasonable. Since that case, a number of federal courts similarly have obliged the defendant to show that requiring it to defend in the particular forum would create a substantial hardship.

Although the Supreme Court never had spoken to the burden of persuasion question in its earlier decisions, it has been held uniformly in the lower federal courts that the burden of making a prima facie showing of the existence of personal jurisdiction falls on the plaintiff and there are countless pronouncements to the same effect since the Supreme Court's Burger King decision. Many of the more recent judicial statements to this effect are cited in the note below. The two groups of cases are not inconsistent. That is because the Burger King opinion discusses the burden of proof only with respect to the additional factors that have been identified by the Court other than minimum contacts that are to be considered "in appropriate cases" as elements of the fair play and substantial justice aspect of the due process doctrine. In some cases these factors might lead a court to decline jurisdiction despite the defendants minimum contacts with the forum.

Thus, as numerous federal cases indicate, and as the illustrative citations in the note below seem to demonstrate, it appears that the burden of showing satisfaction of the minimum contacts requirement continues to be on the plaintiff, but that once a prima facie showing is made, which must be based on affirmative proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts, it becomes the defendant's burden to convince the court that the assertion of personal jurisdiction would be unreasonable. Alternatively, when the jurisdictional question is complex or difficult, a court simply may avoid the issue by resolving the suit on the merits when they clearly must be decided in favor of the party challenging jurisdiction, thereby obviating any need to decide the question; that approach is possible even when the jurisdictional issue lacks complexity.

In considering the jurisdictional issue, a district court may examine discovery material as well as affidavits submitted by parties. A court also has discretion to stay consideration of a motion to dismiss for lack of personal jurisdiction to allow the parties additional time to engage in discovery relevant to the jurisdictional issue when there is some basis for believing that would be fruitful. It is well established that a federal district court has the power to require a defendant to respond to discovery requests relevant to his Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

A district court also may require more than a prima facie showing of jurisdiction by holding a quasi-evidentiary hearing that

may consist of oral testimony, stipulations, affidavits, deposition transcripts, authenticated documents, answers to interrogatories, and requests for admissions. In assessing the evidence, the court may apply a preponderance-of-evidence standard or a standard intermediate between the preponderance-of-evidence guideline and a prima facie showing. If both the plaintiff and the defendant produce supporting evidence and affidavits on the motion, a number of cases hold that plaintiff's prima facie showing will be considered sufficient and the motion to dismiss will be denied, notwithstanding the defendant's presentation of contrary material.

. . . .

If the district court has not conducted a discretionary evidentiary hearing on a nonresident defendant's motion to dismiss for lack of jurisdiction, under Rule 12(b)(2), the plaintiff has the burden of establishing a prima facie case of personal jurisdiction over that defendant. In that connection, the court must accept the facts the complaint alleges relating to the jurisdiction issue as true, at least to the extent they are uncontroverted by whatever material the defendant submits in support of its motion to dismiss. If the contents of the plaintiff's complaint conflicts with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor.

## DISCUSSION

[¶ 14] Although the due process requirements pertaining to personal jurisdiction are flexible and cannot be characterized as rigorous, the cited authorities make clear that there is structure in the process and clear guidelines for parties seeking to invoke the jurisdiction of a Wyoming court over a nonresident defendant. In this case, Cheyenne Publishing filed what can only be described as a bare bones complaint. Of course, this is all that is *required* under W.R.C.P. 8, but such minimal pleadings are not without some attendant risk, especially when the claim to jurisdiction is tenuous. In response to the complaint, Starostka submitted an affidavit establishing that she had no contacts, minimum or otherwise, with Wyoming. In response, Cheyenne Publishing submitted an affidavit and made argument to the district court refining its jurisdictional pleading only to the extent that it clarified that its assertion of Wyoming's jurisdiction over Starostka relied on the theory that her actions in Nebraska came to roost in Wyoming in the form of detrimental, but unspecified, consequences for Cheyenne Publishing. The district court conducted a hearing and Cheyenne Publishing had the opportunity to present any additional evidence to the district court at that time, as well as to submit other documentary evidence in the interim before the hearing. In his treatise on jurisdiction, Professor Robert C. Casad has this to say about this specific subject:

**[1] Spoken**

**[a] Direct Oral Publication**

When long-arm jurisdiction is asserted over a defendant who, personally or through an agent, published the defamation or privacy invasion while physically present in the forum state, the cases have upheld jurisdiction. When the defamatory statement and publication take place outside the forum state, however, long-arm jurisdiction may turn upon whether the particular long-arm statute applies only when the defendant's act occurs within the forum state, or whether it is sufficient if injury is sustained there. If the former is the case, jurisdiction probably will be denied unless the defendant has significant other connections with the forum state, even if the plaintiff is a resident of that state or can identify some injury there. If the long-arm statute is broad enough, however, jurisdiction may be upheld if the out-of-state statements are related to a transaction having substantial connections with the forum state.

**[b] Interstate Telephone**

When injurious statements are uttered outside the forum state but received inside, cases have reached different conclusions on the propriety of long-arm jurisdiction. Some cases have upheld jurisdiction on the ground that the defendant committed a tort in the state so as to come within the

long-arm statute's provision. Others reject the notion that the defendant acted in the state in such a case. Those other courts may recognize that the statements produced "injury" in the state, but long-arm provisions covering tortious acts outside the state that cause injury inside the forum state usually apply only if the defendant has other connections with the state. Invoking the transaction of business provision may or may not support jurisdiction.

2 Robert C. Casad, *Jurisdiction in Civil Action,* § 7.07[1][a] and [b] (1991).

[¶ 15] Viewing Cheyenne Publishing's pleading as favorably as we are able to under these circumstances, we cannot conclude that the district court erred in granting the motion to dismiss. The contract between the parties that is at the heart of this controversy was formed entirely in Nebraska. Starostka's performance of her end of the bargain was facilitated by telephone calls to a toll free number belonging to Cheyenne Publishing that furthered its outreach to Nebraska and other states. For purposes of assessing personal jurisdiction, all contacts associated with the contract were in Nebraska. Thus, Cheyenne Publishing's pleadings do not assert that Starostka had "minimum contacts" with this forum and, to the extent we might accept for purposes of argument that her "contacts" were "minimum," we conclude that they are so attenuated as to render the exercise of personal jurisdiction over Starostka in Wyoming unreasonable, as well as causing the exercise of such jurisdiction to be offensive to traditional notions of "substantial justice and fair play."

## CONCLUSION

[¶ 16] The district court's order dismissing the complaint for lack of personal jurisdiction over Starostka is affirmed.