2015 WY 66

**The STATE of Wyoming, by and through the State Treasurer of Wyoming and the State of Wyoming Retirement System, Appellant (Plaintiff),**

v.

**MOODY'S INVESTORS SERVICE, INC., McGraw–Hill Companies, Inc., and Standard & Poor's Financial Services, LLC, Appellees (Defendants).**

No. S–14–0236.

Supreme Court of Wyoming.

May 11, 2015.

Representing Appellant: David P. Hersh, Special Assistant Attorney General, Burg, Simpson, Eldredge, Hersh & Jardine, P.C., Englewood, Colorado; William L. Simpson, Special Assistant Attorney General, and Larry B. Jones, Special Assistant Attorney General, Burg, Simpson, Eldredge, Hersh & Jardine, P.C., Cody, Wyoming. Argument by Mr. Hersh.

Representing Appellees: Floyd Abrams, Susan Buckley, and Peter J. Linken, Cahill, Gordon & Reindel, LLP, New York, New York; James J. Coster, Joshua M. Rubins, and Glenn C. Edwards, Satterlee, Stephens, Burke & Burke, LLP, New York, New York; Patrick R. Day and Isaac N. Sutphin, Holland & Hart, LLP, Cheyenne, Wyoming; Ryan J. Schwartz, Williams, Porter, Day & Neville, P.C., Casper, Wyoming. Argument by Mr. Day.

Before BURKE, C.J., and HILL, KITE, and FOX, JJ., and RUMPKE, D.J.

RUMPKE, District Judge.

[¶ 1]   The State of Wyoming appeals the district court's decision granting Appellees Moody's Investors Service, Inc., McGraw–Hill Companies, Inc., and Standard & Poor's Financial Services, LLC's (hereinafter the "Rating Agencies") motion to dismiss for lack of personal jurisdiction.[1]   Finding no error, we affirm the district court's decision.

## ISSUES

[¶ 2]   Appellant presents two issues on appeal, stated as follows:

1.  Whether the district court committed error as a matter of law in granting Defendants' motions to dismiss, be-

---

1.  The State sued a third rating agency, Fitch, Inc. Fitch did not join in the Rating Agencies' motion to dismiss because of lack of personal jurisdiction.   Therefore, Fitch is not a party to this appeal.

cause the court failed to analyze and apply properly the "causing important consequences" test as explained in *Application of Black Diamond Energy Partners 2001–Black Diamond Energy Partners 2001–A Ltd. v. S & T Bank,* 2012 WY 84, ¶ 17, 278 P.3d 738, 742 (Wyo.2012) (*"Black Diamond"*).

2. Whether the district court committed error as a matter of law by granting Defendants' motions to dismiss the Plaintiff's claim that Defendants violated the Wyoming state securities statute, Wyo. Stat. Ann. § 17–4–101, *et seq.*

Appellees present a single issue on appeal:

Whether the district court properly dismissed the claims against Defendants–Appellees The McGraw–Hill Companies, Inc., Standard & Poor's Financial Services LLC, and Moody's Investors Service, Inc. (collectively the "Rating Agencies"), pursuant to Wyo. R. Civ. P. 12(b)(2), on the grounds that Plaintiff–Appellant State of Wyoming failed to establish a *prima facie* case of personal jurisdiction over the Rating Agencies.

We conclude this appeal presents only one issue, which the Court restates as follows:

Did the district court err in dismissing the State's claims against the Rating Agencies for lack of personal jurisdiction?

## FACTS

[¶ 3] The facts are largely undisputed. Instead, the parties dispute which facts are relevant to the personal jurisdiction determination and the legal import of those relevant facts. The following facts are undisputed and relevant to the court's personal jurisdiction inquiry.

[¶ 4] On July 7, 2011, Appellant State of Wyoming, by and through the State Treasurer of Wyoming and the State of Wyoming Retirement System (hereinafter the "State") filed this action in Laramie County against Appellees, the Rating Agencies, and Fitch, Inc.[2] The State alleged that the Rating Agencies were liable for hundreds of millions of dollars in investment losses on mortgage-backed securities during the 2007–2008 financial crisis. Specifically, the State alleged that it pursued certain investments relying on the Rating Agencies' fraudulent ratings of the securities as safe, "investment grade" securities. The complaint presented eight separate claims for relief against the Rating Agencies: fraud, fraudulent concealment, negligence or reckless conduct, negligent misrepresentation, civil conspiracy, unjust enrichment, violation of the Wyoming Securities Act, and aiding and abetting in violation of the Wyoming Securities Act. On October 24, 2011, the State filed an amended complaint wherein it set forth the same eight claims separately against each of the three Rating Agencies.

[¶ 5] Moody's is a Nationally Recognized Statistical Rating Organization (NRSRO), which publishes credit ratings on all manner of debt. Moody's is a Delaware corporation and maintains an office and its principal place of business in New York City, New York. At the time the State filed its complaint, McGraw–Hill was an information services provider serving the financial services, education, and business information markets. Before November 2010, McGraw–Hill had three principal divisions: Education, Information & Media, and Financial Services. McGraw–Hill's Financial Services division, operating under the "S & P" brand, provided independent credit ratings, indices, risk evaluation, investment research and data. McGraw–Hill is a New York corporation. Its wholly owned subsidiary, S & P, is a Delaware corporation. Both McGraw–Hill and S & P have their principal places of business in New York. The analysts who provided the ratings for securities purchased by the State were based in New York and Illinois.

[¶ 6] There are no allegations in the Amended Complaint that the Rating Agencies had a physical presence in Wyoming. Likewise, there are no allegations in the Amended Complaint that any of the Rating Agencies sold the Asset Backed Securities (ABS), Residential Mortgage Backed Securities (RMBS), and Collateralized Debt Ob-

---

2. *See* n. 1, *supra.*

ligations (CDO) securities to the State. Instead, the securities were "created, marketed, and sold" by various investment institutions. The Rating Agencies were paid by the issuers of the securities who actually sold the securities to the State. The Rating Agencies' fees were contingent on the independent actions of third-parties, namely the investment banks that sold the securities to the State. The gravamen of the Amended Complaint is that the Rating Agencies provided false credit ratings, which the State relied upon in purchasing the ABS, RMBS, and CDOs from investment banks.

[¶ 7] On November 10, 2011, the Rating Agencies, and Fitch, Inc., jointly moved to dismiss the State's amended complaint under Rule 12(b)(6) on the grounds that it was barred by the doctrine of *res judicata* and for failure to successfully plead a basis for liability. The Rule 12(b)(6) motion was supported by an affidavit of counsel requesting the district court take judicial notice of the two class action complaints, and ensuing consolidated class actions, filed by the State in the Southern District of New York on March 27, 2009, and June 29, 2009.

[¶ 8] Also on November 10, 2011, Moody's, McGraw–Hill, and S & P simultaneously moved to dismiss this action for lack of personal jurisdiction. The State opposed the Rating Agencies' motions arguing that the amended complaint and attachments thereto established the required *prima facie* showing of personal jurisdiction. The district court permitted limited discovery on the issue of personal jurisdiction. While the court did not hold an evidentiary hearing, it did hear legal argument from the parties on the motions on September 28, 2012.

[¶ 9] On December 13, 2013, the district court granted the Rating Agencies' motion to dismiss all claims against them for lack of personal jurisdiction. The district court recognized that this Court, like the United States Supreme Court, distinguishes between specific and general jurisdiction. The court held the Rating Agencies did not have sufficient contacts with Wyoming to rise to the level required by the Due Process Clause, *International Shoe*, and its progeny. As to specific jurisdiction, the court determined the Rating Agencies had not purposely availed themselves of the benefits and protections of the laws of the State of Wyoming, had not specifically targeted Wyoming, and could not reasonably have foreseen being hauled into a Wyoming state court. The court also concluded that it lacked general jurisdiction over the Rating Agencies because their contacts with the State of Wyoming did not rise to a continuous and systematic level. Finally, the district court concluded that allegations of violations of Wyoming's securities law in and of themselves did not trigger the court's jurisdiction over the Rating Agencies.

[¶ 10] Because the district court's decision did not resolve all of the claims in the action, the State moved for entry of a final judgment pursuant to Wyoming Rule of Civil Procedure 54(b) in order to appeal the jurisdictional ruling. On May 14, 2014, the court entered its Rule 54(b) certification order finding there was no just reason to delay review of the dismissal of fewer than all of the Defendants. On June 19, 2014, the court entered a final judgment in favor of the Rating Agencies. The State timely appeals.

### STANDARD OF REVIEW

[¶ 11] This Court recently summarized the standard for cases dismissed on the mixed question of law and fact of *in personam* jurisdiction, clarifying that the procedural path the district court chose to follow determined the plaintiff's burden of proof and the standard applied on appeal:

The court may determine the matter on the basis of pleadings and other materials called to its attention; it may require discovery; or it may conduct an evidentiary hearing. . . .

When the underlying facts are undisputed, the existence of personal jurisdiction is a matter of law. If the district court's determination is made without an evidentiary hearing, the plaintiff must show only a prima facie case to defeat the motion to dismiss. The district court must view the allegations in the pleadings and documentary evidence in the light most favorable to the non-mov-

ing party, resolving all reasonable inferences in favor of the non-moving party.

. . .

No matter the procedural course charted, however, the ultimate question of whether personal jurisdiction can properly be exercised is a question of law to be reviewed de novo.

*Black Diamond Energy Partners 2001–A Ltd. v. S & T Bank,* 2012 WY 84, ¶ 17, 278 P.3d 738, 742 (Wyo.2012) (quoting *Cheyenne Publishing, LLC v. Starostka,* 2004 WY 88, ¶ 10, 94 P.3d 463, 469 (Wyo.2004) (citations omitted)).

[¶ 12] As neither party requested an evidentiary hearing in this case, the district court did not conduct one, but it did permit the parties to engage in limited discovery. The district court properly considered affidavits and evidence submitted by the parties. The district court properly determined that the State carried the burden to "show only a prima facie case to defeat the motion to dismiss." *Cheyenne Publ'g,* ¶ 10, 94 P.3d at 469.

### DISCUSSION

[¶ 13] Wyoming's long-arm statute authorizes courts of this state to exercise personal jurisdiction "on any basis not inconsistent with the Wyoming or United States constitution." Wyo. Stat. Ann. § 5–1–107(a) (LexisNexis 2013). "The Due Process Clause of the Fourteenth Amendment to the United States Constitution operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants." *O'Bryan v. McDonald,* 952 P.2d 636, 638 (Wyo.1998). "Due process requires that the defendant have certain 'minimum contacts' with the forum state such that the exercise of jurisdiction over him does not offend 'traditional notions of fair play and substantial justice.'" *Black Diamond,* ¶ 19, 278 P.3d at 743 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

[¶ 14] We have adopted the United States Supreme Court's distinction between "general" and "specific" personal jurisdiction:

"Specific" jurisdiction is when a state exercises jurisdiction over a defendant in a suit arising out of or related to that defendant's contacts with the forum.... In contrast, "general" jurisdiction is when a state exercises jurisdiction over the defendant in a suit not arising out of or related to that defendant's contacts with the state.... Even if a single act arises out of or is related to the suit, a state may not have jurisdiction if the nature of the act creates only an "attenuated" connection with the forum.

*Amoco Prod. Co. v. EM Nominee Partnership Co.,* 886 P.2d 265, 267–68 (Wyo.1994) (citing *Helicopteros Nacionales De Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 1872 nn. 8–9, 80 L.Ed.2d 404 (1984); and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 n. 18, 105 S.Ct. 2174, 2184 n. 18, 85 L.Ed.2d 528 (1985)).[3]

[¶ 15] In *First Wyoming Bank, N.A., Rawlins v. Trans Mountain Sales & Leasing, Inc.,* 602 P.2d 1219 (Wyo.1979), we adopted a three-part test for defining the outer limits of specific, personal jurisdiction:

First, the defendant must [purposefully] avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 1221; *accord Black Diamond,* ¶ 21, 278 P.3d at 743.

[¶ 16] On appeal, the State contends the district court failed to properly analyze and apply the "causing important consequences" test for specific personal jurisdiction, as set forth by this Court in *Black Diamond.* The

---

**3.** The State has not appealed from the district court's determination that Wyoming lacked general personal jurisdiction over the Rating Agencies under *Goodyear Dunlop Tires Operations, S.A. v. Brown,* —— U.S. ——, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011). Therefore, the Court will not address this issue.

State argues that the district court erred in finding that there was no "purposeful availment" by the Rating Agencies by implicitly and improperly applying the United States Supreme Court plurality decision in *J. McIntyre Machinery, Ltd. v. Nicastro*, —— U.S. ——, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011). The State urges this Court to employ instead the test set forth in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and discussed in *Walden v. Fiore*, —— U.S. ——, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). Arguing that the Rating Agencies not only participated in the creation of the volatile securities, but also knew these securities would be sold to a targeted portion of the investment marketplace, including Wyoming, the State maintains the Rating Agencies should have known, or could reasonably have foreseen, that their wrongful conduct would harm institutional investors such as the State of Wyoming.

■ [¶ 17] "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S.Ct. at 1121 (internal quotation marks omitted). In *Walden*, the Supreme Court reaffirmed that it is the *defendant's* "suit-related conduct" that must create the "substantial connection with the forum State." *Id.* To this end, the Supreme Court explained the analytical framework the courts should apply:

First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State. . . . Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be "decisive in determining whether the defendant's due process rights are violated."

Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. . . . And although physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means— is certainly a relevant contact.

[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's *conduct* that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. . . . To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.

*Walden*, 134 S.Ct. at 1122–23 (citations omitted) (emphasis added).

### Specific Personal Jurisdiction

■ [¶ 18] Under the *Walden* framework, whether the Rating Agencies knew that investors in Wyoming would rely on their credit ratings cannot alone form the basis for exercising personal jurisdiction over the Rating Agencies in Wyoming. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980) (" 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause"). Rather this Court must look at the defendant's own contacts with the forum state relating to the litigation. The State's First Amended Complaint does not contain any allegations of contacts between the Rating Agencies and Wyoming relating to the securities the State claims it purchased in reliance on fraudulent credit ratings. The fact that the investment banks brought the credit ratings to Wyoming to sell their securities is not sufficient to establish personal jurisdiction over the Rating Agencies. *See Helicopteros*, 466 U.S. at 417, 104 S.Ct. at 1873 ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

[¶ 19] The State argues that the district court erred by "implicitly" relying upon the plurality opinion in *J. McIntyre Machinery* when the district court concluded that "there [was] no allegation that the State of Wyoming was specifically targeted by any of the Defendants." The Court disagrees. In-

stead, the district court correctly relied upon the United States Supreme Court's holding in *Burger King* that in order for a forum state to exercise personal jurisdiction over a non-resident, that party must have " 'purposefully directed' his activities at residents of the forum." *Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. at 2182. In other words, a defendant must "purposefully avail" itself of the opportunity to cause important consequences in the forum state before personal jurisdiction can be found under *Black Diamond.*

[¶ 20] The Supreme Court's holding in *Burger King* is in accord with *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804. In *Calder*, the United States Supreme Court held that California courts had personal jurisdiction over a Florida-based editor and writer for a libel suit filed by a California resident. *Id.*, 465 U.S. at 789, 104 S.Ct. at 1486–87. The Supreme Court concluded that "California [was] the focal point both of the story **and** of the harm suffered," and therefore, California had personal jurisdiction over the editor and writer because "their intentional, and allegedly tortious, actions were expressly aimed at California." *Id.*

[¶ 21] In *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), Judge Gorsuch explained the *Calder* decision:

> Distilling *Calder* to its essence, we thus understand the Court to have found purposeful direction there because of the presence of (a) an intentional action (writing, editing, and publishing the article), that was (b) *expressly aimed* at the forum state (the article was about a California resident and her activities in California; likewise it was drawn from California sources and widely distributed in that state), with (c) knowledge that the brunt of the injury would be felt in the forum state (defendants knew Ms. Jones was in California and her career revolved around the entertainment industry there).

514 F.3d at 1072 (emphasis added).

[¶ 22] Here, the State has failed to make a *prima facie* showing that Wyoming was the "focal point," or that the Rating Agencies "expressly aimed" their tortious conduct at Wyoming. The district court's consideration of whether the Rating Agencies "specifically targeted" Wyoming constitutes a proper application of the "expressly aimed" test announced in *Calder*, which the State urges us to apply. The district court did not err in concluding that the Rating Agencies had not purposefully availed themselves of the opportunity to cause important consequences in Wyoming because nothing in the First Amended Complaint alleges conduct "expressly aimed" at Wyoming. *Calder*, 465 U.S. at 789, 104 S.Ct. at 1486–87.

[¶ 23] The State argues on appeal that just as the reporter in *Calder* "sent words" into California to defame the plaintiff actress, so the Rating Agencies engaged in "communications to induce purchase" of the securities in Wyoming, and that by "specifically direct[ing] this information to a select private class of qualified investors," they created the requisite "substantial connection" with the forum state. However, this analogy to *Calder* is not persuasive.

[¶ 24] As the Supreme Court explained in *Walden*, "[t]he strength of [the] connection [between California and the lawsuit in *Calder*] was largely a function of the *nature* of the libel tort." *Walden*, 134 S.Ct. at 1124 (emphasis added). In other words, the alleged wrongdoing, libel, was itself tied to the location into which the words were "sent." *Id.* "[B]ecause publication to third persons is a necessary element of libel, the defendants' intentional tort actually occurred *in* California. The tort of libel is generally held to occur wherever the offending material is circulated." *Id.* (citations, quotation marks, and parentheses omitted) (emphasis in original).

[¶ 25] Not so with the nature of the allegations in this case. The claims of tortious conduct in the Rating Agencies' communication of securities ratings are not in and of themselves tied to, or expressly aimed at, the State of Wyoming. That is to say, unlike a claim of libel, nothing about the *nature* of the alleged fraud—or any of the specific claims alleged by the State—inextricably links the misconduct to the *location* where the information was disseminated, *Wyoming*. Put

more simply, nothing about the fraudulent credit ratings actually being disseminated *in* Wyoming is a necessary element of the tortious conduct in this case. As in *Walden,* the location of the alleged harm is a function of the plaintiff's activities, not the purposeful actions of the defendant. *Walden,* 134 S.Ct. at 1125 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). Therefore, as in *Walden,* the location of the harm cannot dictate where personal jurisdiction over the defendants may be had.

### Jurisdiction under the Wyoming Uniform Securities Act, Wyo. Stat. Ann. § 17–4–101, et seq.

[¶ 26] As a separate issue, the State argues that even if the conduct of issuing fraudulent ratings did not occur in Wyoming, by virtue of the simple fact that the State alleged a violation of the Wyoming Uniform Securities Act, the Rating Agencies' conduct subjects them to the reach of State law because the Act applies "to any 'person' connected either directly or indirectly with the 'offer, sale or purchase of any security.' " The State again relies on the "expressly aimed" language of *Walden,* but confuses the question of personal jurisdiction with a merits inquiry, which did not form the basis of the district court's dismissal of the Rating Agencies in this case.

[¶ 27] That the State sufficiently stated a claim for relief to defeat a Rule 12(b)(6) motion does not thereby confer personal jurisdiction over the defendants. The State's reliance on *Genesee County Employees' Retirement System v. Thornburg Mortgage Securities Trust 2006–3,* 825 F.Supp.2d 1082 (D.N.M.2011), is misplaced. *Genesee County* did not address a personal jurisdiction dispute. The district court did not identify personal jurisdiction as one of the issues raised by the rating agencies in that matter. *Id.,* 825 F.Supp.2d at 1097. Instead, the case addressed a motion to dismiss based upon a failure to state a claim, whether the First Amendment barred any claim against the rating agencies, and whether any state law claims were preempted by Federal law. *Id.*

[¶ 28] A substantive state statute cannot supersede the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Wyoming's long-arm statute, like any such state statute, only allows Wyoming courts to exercise jurisdiction to the extent permitted by the Federal Constitution. A substantive statute cannot expand the ability of a court to reach outside its geographic boundaries beyond the Due Process Clause. Again, the State's reliance on *Great Western Insurance v. Miranda* is misplaced. In *Great Western,* the district court conducted a minimum contacts analysis in concluding that the Utah District Court had personal jurisdiction over a California insurance agent who had illegally accessed Great Western's computer system located in Utah. *Great Western Insurance Co. v. Miranda,* No. 1:14–CV–61–DN, 2014 WL 2967924, at *3 (D.Utah July 1, 2014). Importantly, the court in *Great Western* concluded it did not have personal jurisdiction over a California attorney even though the complaint alleged a violation of the Utah Uniform Trade Secrets Act. *Id.* If substantive state law could unilaterally convey personal jurisdiction over an out-of-state defendant, then Mr. Shields would not have been dismissed in *Great Western.* Moreover, a long-arm statute would be unnecessary.

[¶ 29] Under the third prong of the *Black Diamond* personal jurisdiction test, the district court also concluded that it would be neither fair nor reasonable for the Wyoming courts to exercise personal jurisdiction over the Rating Agencies. The decision above affirming the district court's conclusion on the basis of the first prong of the *Black Diamond* test negates any need for this Court to consider the propriety of the lower court's decision regarding the third prong of the *Black Diamond* test. Therefore, the Court will not address that aspect of the district court's opinion and order.

### CONCLUSION

[¶ 30] The State of Wyoming has failed to establish a *prima facie* case of personal jurisdiction over the Rating Agencies. The dis-

trict court's order dismissing all of Plaintiff–Appellant's claims against Defendants–Appellees Moody's, McGraw–Hill, and S & P is affirmed.