2006 WY 161

Douglas MORRISON, Charles W. Smith, and Ronald Hansen, in their representative capacities as Trustees of the Newell B. Sargent 1990 Living Trust, Appellants (Plaintiffs),

v.

Forrest L. CLAY and F. Kelly Clay, Appellees (Defendants/Counter-claimants).

Nos. 05–281, 06–21.

Supreme Court of Wyoming.

Dec. 28, 2006.

Representing Appellants: Judith Studer and Rick L. Koehmstedt, of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming.

Representing Appellees: Patrick Murphy, of Williams, Porter, Day & Neville, P.C., Casper, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL *, and BURKE, JJ, and STEBNER, D.J., Retired.

BURKE, Justice.

[¶ 1] Douglas Morrison, Charles W. Smith, and Ronald Hansen, in their representative capacities as Trustees of the Newell B. Sargent 1990 Living Trust, appeal a district court order confirming an arbitration award. The district court affirmed the award on its merits and ruled that the parties had agreed that the arbitration award would be final and binding. The court also determined that the parties had waived the right to challenge the selection and identity of the arbitrators and the arbitration process. On appeal, the Trust does not challenge those rulings. Because those rulings are dispositive, the issues raised concerning the arbitration award are moot. The Trust also appeals from the district court's order granting attorneys' fees to Appellees, the Clays. Finding no abuse of discretion, we affirm the award of attorneys' fees.

## ISSUES

[¶ 2] The Trust identifies the following issues for review:

1. Should an unsigned arbitration award that violated Wyoming Statutes and the parties' agreement be vacated?

2. Do clear violations of the code of ethics governing the arbitration [constitute] "undue means" and/or "misconduct" that requires the arbitration award be vacated?

A. Did the court apply an incorrect standard by requiring the plaintiffs show actual prejudice by clear and convincing evidence?

B. Did the court abuse its discretion in not allowing Professor Burman to opine the arbitrator's failure to make the necessary disclosures as a violation of the code of ethics?

3. Did the arbitrators exceed their authority? If so, does such action require that the award be vacated?

A. Did the failure to conduct the arbitration in accordance with the American Arbitration Association Rules, as agreed to by the parties, constitute a basis to vacate the award?

B. Did the use of minority and marketing discounts to determine value of the stock, in violation of the stock purchase agreement, exceed the authority of the arbitrators, and therefore require the court to vacate the award?

4. Did the court improperly award attorneys' fees?

A. Did the limited provision in the settlement agreement that allowed for recovery of attorneys' fees apply?

B. Did defendants' failure to identify and segregate attorneys' fees and costs prohibit an award of fees?

The Clays state several issues. Two are pertinent to our resolution:

1. Is this appeal moot because appellants failed to challenge the district court's determination that they had contractually waived their right to appeal the arbitration award?

2. If this appeal is not moot, does appellants' waiver of any right to appeal the arbitration award nonetheless require

---

* Chief Justice at time of oral argument.

summary affirmation of the district court's order?

## FACTS

[¶ 3] The Newell B. Sargent 1990 Living Trust ("the Trust") was created by Newell B. Sargent to hold his shares in Wyoming Beverages, Inc. ("WBI"). Mr. Sargent passed away in April of 2001. At the time of this litigation, Forrest L. Clay, F. Kelly Clay and the Trust were the sole shareholders of WBI.

[¶ 4] In 1985, Mr. Sargent and the Clays entered into a Stock Purchase Agreement. Under the terms of that agreement, at the time of Mr. Sargent's death, the Clays were entitled to purchase Mr. Sargent's stock in WBI. If no agreement could be reached as to the shares' value, the "value, interest rate and [payment] period" were to be determined by arbitration. The Stock Purchase Agreement also provided that if arbitration is elected, then "each stockholder shall name an arbitrator and the decision of the majority shall be binding on all parties."

[¶ 5] After Mr. Sargent's death, the Clays elected to purchase all of the WBI stock held by the Trust. The parties were unable to agree on the value of the stock. On August 2, 2001, the Clays made a written demand for arbitration pursuant to the 1985 Stock Purchase Agreement. The Clays notified the Trust of their choice of arbitrators. The Trust initially refused to choose an arbitrator and challenged the validity of the arbitrator selection clause. In response, on August 31, 2001, the Clays filed a Complaint for Declaratory Judgment seeking a judicial determination as to the validity of the arbitrator selection clause. In an attempt to resolve the Declaratory Judgment action, the parties entered into a settlement agreement containing the following pertinent provisions:

2. ... (a) Forrest Clay, F. Kelly Clay and the Newell B. Sargent 1990 Trust have each selected one arbitrator; and (b) the decision of a majority of the arbitrators as to the value of the Trust's stock in Wyoming Beverages and on any other matters before the arbitrators shall be final and binding on all parties. Any decision or award of a majority of the arbitrators shall be enforceable in any federal or state court having jurisdiction thereof. The parties hereby expressly waive and release any challenge to the enforceability of any arbitrators' award or decision based on the arbitrator selection process or the identity of the arbitrators, or the submission of these matters to arbitration under the Stock Purchase Agreement. The parties further expressly acknowledge the enforceability of any award or decision by the arbitrators as provided by Wyoming law.

. . .

12. ... Any dispute arising out of or relating in any way to this Agreement shall be resolved by a majority of the arbitrators agreed to in this Agreement through final, binding and non-appealable arbitration in accordance with the arbitration rules of the American Arbitration Association. . . .

[¶ 6] Prior to dismissal of the Declaratory Judgment litigation, the Trust advised, by letter, that it would not attend the scheduled arbitration and that the Trustees, "hereby rescind and withdraw their signatures to the proposed Settlement Agreement. . . ." Additionally, the Trust filed counterclaims in the Declaratory Judgment action in which it contended that the arbitrator selection clause was "unconscionable and unenforceable."

[¶ 7] While the Declaratory Judgment litigation was still pending, the arbitration panel issued an order which provided that:

... On or before January 14, 2002, counsel for each party shall submit a Statement of Position which identifies any issues that counsel wishes to raise relating to (i) the validity or enforceability of the arbitration agreement or any portions thereof; (ii) the jurisdiction of the arbitration panel to proceed; (iii) and the rules and procedures which should govern the arbitration proceedings. The Statements of Position should be accompanied by applicable legal authority and any pertinent documentation.

Subsequently, in accordance with the settlement agreement, the arbitration panel entered an Order which stated in pertinent part:

The parties, through their counsel, have agreed that the arbitration agreements are fully enforceable and binding; that in the event of a dispute, all issues relating to the procedures for the arbitration, discovery, and management of the arbitration process will be resolved by the arbitrators; and that the action now pending in the Wyoming state court will be dismissed.

The Declaratory Judgment litigation was dismissed with prejudice on March 1, 2002.

[¶ 8] A three day arbitration hearing was held beginning March 25, 2002. At the conclusion of the hearing, the arbitration panel issued a unanimous written award valuing the stock of the Trust at $8 million and establishing a payment period and interest rate. The Trust filed an Application to Vacate Award and Complaint for Declaratory Judgment with the district court challenging the amount of the award, the procedure by which the arbitration was conducted, and asserting a conflict of interest of one of the arbitrators. In a counterclaim, the Clays requested attorneys' fees for breach of the Settlement Agreement.

[¶ 9] A trial was held. The district court issued its Findings of Fact, Conclusions of Law, and Judgment, confirming the arbitration award and finding that the Clays' request for attorney fees should be granted. The Trust appealed from the district court's Findings of Fact, Conclusions of Law, and Judgment and the subsequent Order Awarding Attorney's Fees and Costs. We consolidated the two appeals for briefing and decision.

## DISCUSSION

### No. 05–281 Arbitration Award

[¶ 10] In its Findings of Fact, Conclusions of Law, and Judgment, the district court found, in pertinent part:

49. The provisions of the Settlement Agreement included the following:

2 .... the parties agree to conduct a final, binding arbitration .... In particular: (a) Forrest Clay, F. Kelly Clay and the Newell B. Sargent 1990 Trust have each selected one arbitrator; and (b) the **decision of a majority of the arbitra-** tors as to the value of the Trust's stock in Wyoming Beverages and on any other matters before the arbitrators shall be final and binding on all parties. Any decision or award of a majority of the arbitrators shall be enforceable in any federal or state court having jurisdiction thereof. **The parties hereby expressly waive and release any challenge to the enforceability of any arbitrators' award or decision based on the arbitrator selection process or the identity of the arbitrators, or the submission of these matters to arbitration under the Stock Purchase Agreement.** [T]he parties further expressly acknowledge the enforceability of any award or decision by the arbitrators as provided by Wyoming law.

3. The Trust and the Trustees hereby agree and consent to Forrest Clay's selection of Bruce D. Pringle as arbitrator and to F. Kelly Clay's selection of H. Alan Dill as arbitrator.

4. The Clays hereby agree and consent to the Trust's selection of Michael D. Zimmerman as arbitrator.

\* \* \*

6. The Trust and the Trustees hereby expressly agree and acknowledge that the Stock Purchase Agreement and the arbitrator selection clause contained therein are enforceable as written, are not unconscionable and are not otherwise void or voidable based on any legal or equitable theory or claim, and hereby **waive any challenge to the arbitrators selected or to the arbitration process.**

\* \* \*

12. ... **Any dispute arising out of or relating in any way to this Agreement shall be resolved by a majority of the arbitrators agreed to in this Agreement through final, binding and non-appealable arbitration** in accordance with the arbitration rules of the American Arbitration Association. The prevailing party in any such dispute shall be entitled to recover its reasonable attorneys' fees and costs (including, without limitation, any arbitration fees and costs)

from the other party, in addition to any other relief to which the prevailing party may be entitled.

53. After additional settlement discussions, legal counsel for The Newell B. Sargent 1990 Living Trust and legal counsel for Forrest L. Clay and F. Kelly Clay agreed to recognize the validity and enforceability of the Settlement Agreement, to go forward with the arbitration provided for thereunder, and to dismiss the pending litigation.

* * *

55. On February 12, 2002, an Arbitration Management Order was entered by the selected, agreed upon, and retained arbitrators, which documented that:

> 12. The parties, through their counsel, have agreed that the **arbitration agreements are fully enforceable and binding; that in the event of a dispute, all issues relating to the procedures for the arbitration, discovery, and management of the arbitration process will be resolved by the arbitrators;** and that the action now pending in the Wyoming state court will be dismissed.

* * *

111. **Competent and persuasive evidence was presented at trial to establish by a preponderance of the evidence that Plaintiffs breached the material provisions of paragraphs 2, 3, 6, and 12 of the Settlement Agreement** in (1) refusing to comply with and disputing the provisions of paragraph 2 thereof, which provide: "(b) the decision of the majority of the arbitrators as to the value of the Trust's stock in Wyoming Beverages and on any other matters before the arbitrators shall be final and binding on all parties. Any decision or award of a majority of the arbitrators shall be enforceable in any federal or state court having jurisdiction thereof. The parties hereby expressly waive and release any challenge to the enforceability of any arbitrators' award or decision based on the arbitrator selection process or the identity of the arbitrators, or the submission of these matters to arbitration under the Stock Purchase Agreement."; (2) refusing to close on the sale of the subject

Wyoming Beverages, Inc. stock in accord with the Arbitration Award; (3) challenging the award based, in part, on the identity of the arbitrators, to whom Plaintiffs expressly agreed in the Settlement Agreement; and (4) not bringing disputes arising out of and relating to the Settlement Agreement to be resolved by a majority of the arbitrators agreed to in the Settlement Agreement.

(Emphasis added.)

[¶ 11] The Trust challenges the district court's decision confirming the arbitration award. Significantly, as the Clays point out, the Trust does not dispute the district court's findings that the Trust breached the settlement agreement by refusing to comply with the provision providing that "the decision of the majority of the arbitrators as to the value of the Trust's stock in Wyoming Beverages and on any other matters before the arbitrators shall be final and binding on all parties." Nor did the Trust contest the district court's finding that it had waived the right to seek judicial review of the identity of and selection of the arbitrators, or the arbitration process. The Clays, relying on our holding in *Ultra Resources, Inc. v. McMurry Energy Co.,* 2004 WY 121, 99 P.3d 959 (Wyo. 2004), contend that the failure to challenge those rulings is fatal to the Trust's appeal. We agree.

[¶ 12] In *Ultra Resources,* appellant challenged the district court's confirmation of an arbitration award where the district court held that: (1) the parties had agreed, in a settlement agreement, that the outcome of the arbitration would be binding and non-appealable; and (2) the appellant had failed to prove the merits of its arguments in favor of vacating the award. On appeal, the appellant designated for review only the merits of the decision not to vacate. *Id.,* ¶ 1, 99 P.3d at 960. We held that:

> Rule 7.01 of the Wyoming Rules of Appellate Procedure requires an appellant to include in its opening brief a statement of the issues presented for review. W.R.A.P. 7.01(d). Rule 7.01(f), W.R.A.P., requires an appellant to present argument on every issue it is requesting this Court to review on appeal.

. . .

Presenting argument in a reply brief is not equivalent to framing the issues in an opening brief. A reply brief is not a second chance to raise an issue or present argument that the appellant had the responsibility, but failed, to address in its opening brief.

. . .

Since Ultra failed in its opening brief to designate or argue the issue of the propriety of the holding by the district court that it contractually waived its right to seek judicial review of the arbitration award, the holding is uncontested. The points presented in this court on behalf of the plaintiff in error are very limited and it is, of course, elementary that points not urged in this court are deemed to be waived. Ultra's opening brief raises no issue that would support reversal of the district court order. Ultra's issue regarding the merits of its motion to vacate the arbitration award is moot.

*Ultra Resources,* ¶¶ 7, 11, 13, 99 P.3d at 962–64 (internal citation and quotation marks omitted).

[¶ 13]   Here, the Trust failed to challenge dispositive rulings of the district court. As a result, all issues presented by the Trust concerning the arbitration award are moot. The appeal in No. 05–281 is dismissed.

### No. 06–21 Attorneys' Fees

[¶ 14]   After the district court confirmed the arbitration award, the Clays submitted billing records and affidavits supporting the reasonableness of their request for attorneys' fees. The Trust objected, claiming that attorneys' fees were not authorized, or alternatively, that the request for fees was excessive, and that the fees incurred should be allocated among the various claims the Clays asserted. The Clays requested and obtained leave to file a reply. In their reply, the Clays made efforts to defend the hourly rates charged by out-of-state attorneys, the involvement of multiple attorneys, and argued that the interrelationship between all the claims made allocation unnecessary in this case. To further address the Trust's allocation argument, the Clays identified a portion of the fees that could be attributed solely to the litigation of their other counterclaims or to the representation of WBI as intervenor.

[¶ 15]   After hearing argument and taking the matter under advisement, the district court issued a decision letter and its Order Awarding Attorney's Fees and Costs. The district court considered the federal lodestar test and the factors set forth in Wyo. Stat. Ann. § 1–14–126(b) (LexisNexis 2005).[1] The district court found it appropriate to award a lesser amount than requested by the Clays in order to: 1) account for charges attributable to representation of WBI and the pursuit of the Clays' other counterclaims; and 2) adjust for reasonable rates and hours.

[¶ 16]   The Trust challenges the award as unauthorized and unreasonable. We review a district court's decision awarding attorneys' fees under an abuse of discretion standard. *Askvig v. Wells Fargo Bank Wyo., N.A.,* 2005 WY 138, ¶ 22, 121 P.3d 783, 789 (Wyo.2005). The Trust bears the burden of establishing that the trial court abused its discretion. *Id.* Generally, Wyoming subscribes to the American rule regarding re-

---

1. Wyo. Stat. Ann. § 1–14–126(b) (LexisNexis 2005) provides:
      (b) In civil actions for which an award of attorney's fees is authorized, the court in its discretion may award reasonable attorney's fees to the prevailing party without requiring expert testimony. In exercising its discretion the court may consider the following factors:
      (i) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
      (ii) The likelihood that the acceptance of the particular employment precluded other employment by the lawyer;
      (iii) The fee customarily charged in the locality for similar legal services;
      (iv) The amount involved and the results obtained;
      (v) The time limitations imposed by the client or by the circumstances;
      (vi) The nature and length of the professional relationship with the client;
      (vii) The experience, reputation and ability of the lawyer or lawyers performing the services; and
      (viii) Whether the fee is fixed or contingent.

covery of attorneys' fees, making each party responsible for his own attorneys' fees. *Schlesinger v. Woodcock*, 2001 WY 120, ¶ 21, 35 P.3d 1232, 1239 (Wyo.2001). However, a contract may expressly authorize an award of attorneys' fees to a prevailing party. *Id.*

 [¶ 17] First, the Trust argues the Settlement Agreement does not provide for attorneys' fees. The Trust does not dispute that the district court matter was one "arising out of or related" to the Settlement Agreement. However, it asserts that the attorneys' fees provision requires that disputes arising from the Settlement Agreement be arbitrated. The Trust reasons that because the district court action was not arbitration, that the agreement does not authorize an award of attorneys' fees by the district court. We reject this reasoning because the obvious intent of the Settlement Agreement was to foreclose future litigation between the parties and to award attorneys' fees to the prevailing party in any dispute involving the Settlement Agreement. The district court properly found that the Clays could recover attorneys' fees.

[¶ 18] The Trust also asserts that the Clays did not meet their burden of proof in segregating attorneys' fees and establishing the reasonableness of those fees. We have recognized that when possible, fees should be segregated between multiple clients and/or multiple claims. *Cline v. Rocky Mt., Inc.*, 998 P.2d 946, 952 (Wyo. 2000). The Clays submitted detailed billing records along with affidavits explaining the complexity of the litigation to support the reasonableness of their fee request. Although the Clays did not concede that allocation was appropriate in this case, they identified a significant portion of the fees that might be properly allocated to other aspects of the litigation. We conclude that the district court had ample evidence to determine the reasonableness of the fees and to make a proper allocation.

[¶ 19] The district court declined a portion of the fees incurred by the Clays, finding that some allocation among claims and parties was appropriate. The court's decision letter reflects thorough and thoughtful consideration of the parties' submissions and the factors in Wyo. Stat. Ann. § 1–14–126(b). It analyzed reasonableness according to the lodestar test: (1) whether the fee charged represents the product of reasonable hours times a reasonable rate; and (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward. *Schlesinger*, ¶ 21, 35 P.3d at 1239. The district court concluded that downward adjustments were "necessary to establish an award of attorney's fees that represent[ed] 'the product of reasonable hours times a reasonable rate.'" The district court rejected the Clays' contention that it was reasonable for four attorneys and two paralegals to attend the trial, limiting the hours to those charged by two attorneys and one paralegal. Additionally, the district court found that certain hourly rates charged by out-of-state attorneys did not represent "a reasonable rate" and should be limited to $200 per hour. Overall, the district court awarded 36% less than the Clays requested for attorneys' fees. We find no abuse of discretion and affirm the district court's award of attorneys' fees to the Clays.