2008 WY 153

Richard MEYER and Miracles Meyer,
Appellants (Plaintiffs),

v.

Tony HATTO and Ben Sullivan, individually and Tony Hatto and Ben Sullivan d/b/a Design Workshop, a partnership, Appellees (Defendants).

Tony Hatto and Ben Sullivan, individually and Tony Hatto and Ben Sullivan d/b/a Design Workshop, a partnership, Appellants (Defendants),

v.

Richard Meyer and Miracles Meyer,
Appellees (Plaintiffs).

Nos. S–07–0223, S–07–0224.

Supreme Court of Wyoming.

Dec. 23, 2008.

Representing Richard Meyer and Miracles Meyer: Robert N. Williams and Pamela T. Harvey of Meyer & Williams, Attorneys at Law, P.C., Jackson, Wyoming. Argument by Mr. Williams.

Representing Tony Hatto and Ben Sullivan, individually, and Tony Hatto and Ben Sullivan d/b/a Design Workshop: Mark Diehl Sullivan of Levy Coleman LLP, Jackson, Wyoming, at the time of briefing; and of Mark D. Sullivan, P.C., Wilson, Wyoming, at the time of oral argument.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] These two consolidated appeals arise from the dismissal of a complaint for lack of personal jurisdiction. Richard and Miracles Meyer reside in Teton County, Wyoming. They own real property in the State of Hawaii. Tony Hatto and Ben Sullivan reside in Hawaii. They are partners in a business known as Design Workshop, also based in Hawaii. The Meyers entered into a contract with Design Workshop for the design of a residence the Meyers intended to build on their Hawaiian property.

[¶ 2] The contractual relationship soured and ultimately the Meyers sued Design Workshop, as well as Hatto and Sullivan individually, in Wyoming. The district court dismissed the complaint for lack of personal jurisdiction over Hatto, Sullivan, and Design Workshop. In appeal number S-07-0223, the Meyers appeal the dismissal. We affirm.

[¶ 3] In appeal number S-07-0224, Hatto, Sullivan, and Design Workshop (for the sake of simplicity, the plurality will hereinafter be referred to collectively as "Design Workshop") appeal the denial by the district court of their request for the award of attorneys' fees and expenses. We reverse that decision and remand for the determination and award of appropriate attorneys' fees and expenses.

**ISSUES**

[¶ 4] In appeal number S-07-0223, the Meyers present three issues:

1. Whether the District Court erred when it dismissed Plaintiffs' claims on the ground that it lacked personal jurisdiction over the Defendants?

2. Should the District Court have granted an evidentiary hearing to determine the nature, quality, quantity and sufficiency of the contacts that the Defendants had with Wyoming before dismissing the case for lack of *in personam* jurisdiction?

3. Did Defendants' [sic] submit to the jurisdiction of the District Court by claiming affirmative relief in the form of a re-

quest for recovery of attorneys' fees and costs?

[¶ 5] In appeal number S–07–0224, Design Workshop requests this Court review the district court's denial of its motion for attorneys' fees and costs for abuse of discretion.

## FACTS

[¶ 6] While in Hawaii, the Meyers were referred to Design Workshop by a local contractor. The Meyers approached Design Workshop in Hawaii to enlist its help in designing the residence they planned to build on their Hawaiian property. Even though no member of Design Workshop had any connection to Wyoming, whether business or personal, the Meyers decided to work with the Hawaiian company. Mr. Meyer drafted a contract after he returned to his residence in Wyoming. In September 2004, the Meyers returned to Hawaii to meet again with Design Workshop. Some changes to the contract were agreed upon and the "Agreement for Designing Services" (Agreement) was executed by the parties.

[¶ 7] After the Agreement was executed, the Meyers returned to Wyoming. Mr. Meyer, with the knowledge of Design Workshop, hired a contractor from Wyoming. Eventually, the contractor obtained a general contractor's license in Hawaii so he could work on the project there. Mr. Meyer also consulted various other tradesmen in Wyoming about the Hawaii project.

[¶ 8] The Agreement contained terms indicating that the parties thereto would work closely together on the project. For instance:

Designer will conduct a pre-design meeting with Meyer and Meyer's contractor. In this meeting Designer will discuss the design program with the team. As a team, all parties will then determine an appropriate budget and scope of work for the project.

According to an affidavit in support of the motion to dismiss by Ben Sullivan, such close collaboration did indeed occur:

After entering into the Contract, Design Workshop spent 18 months fully designing the home in question for the Meyers, working closely with the Meyers and their contractor, Bill Swensen, on the program for the home, materials and potential cost-saving measures. Design Workshop's efforts went far beyond the scope of the Contract, and included lengthy and frequent interaction with the Meyers' contractor to select materials and building systems, and to save money by exploring extraordinary materials sourcing options, such [as] a custom pre-fabricated whole house structural system from Bali.

These contacts were either in person in Hawaii or Bali, or by telephone, fax, or regular mail between Design Workshop in Hawaii and the Meyers and their contractor in Wyoming. No member of Design Workshop ever journeyed to Wyoming.

[¶ 9] After approximately eighteen months of work on the project, differences developed between the Meyers and Design Workshop, and the project was halted. The Meyers filed the instant suit in the Ninth Judicial District Court of Wyoming. Design Workshop responded with a motion to dismiss for lack of personal jurisdiction. The motion to dismiss included a request for attorneys' fees and expenses. Discovery pertaining to the issue of personal jurisdiction was allowed. After briefing and the submission of documents including affidavits, but without holding an evidentiary hearing, the district court dismissed the complaint.

[¶ 10] Design Workshop then submitted a motion renewing its request for the award of attorneys' fees and expenses. As in its motion to dismiss, Design Workshop grounded its motion on the fact that the Agreement provided for binding arbitration in the event of a dispute and for attorneys' fees and costs to be awarded to the prevailing party. The district court denied this motion without comment. These appeals ensued.

## APPEAL NUMBER S–07–0223

## DISCUSSION

### *Lack of Evidentiary Hearing*

[¶ 11] In their second issue, the Meyers contend the district court should have held an evidentiary hearing before de-

ciding the motion to dismiss. Since this challenges the procedure followed by the district court in arriving at its decision, it must be addressed first. Procedurally, a district court possesses extreme latitude in determining whether personal jurisdiction exists. The district court may determine the matter on the basis of pleadings and other materials called to its attention; it may require discovery; or it may conduct an evidentiary hearing to resolve any apparent factual questions. *Cheyenne Publishing, LLC v. Starostka,* 2004 WY 88, ¶ 10, 94 P.3d 463, 469 (Wyo. 2004); *Shaw v. Smith,* 964 P.2d 428, 433 (Wyo.1998); *O'Bryan v. McDonald,* 952 P.2d 636, 638 (Wyo.1998); *PanAmerican Mineral Servs., Inc. v. KLS Enviro Resources, Inc.,* 916 P.2d 986, 989 (Wyo.1996). The district court has discretion to decide the procedural scheme it will follow, and its procedural decisions will not be reversed absent an abuse of that discretion.

[¶ 12] The Meyers requested an evidentiary hearing. The district court, after reviewing the parties' briefs and documentary submissions, sent a letter to the parties imparting its preliminary determination of the pertinent undisputed basic facts. The district court stated that if any party disagreed, it would hold an evidentiary hearing. The Meyers sent a letter to the district court objecting to certain statements as either false or incomplete. Design Workshop responded by letter stipulating to the basic facts that pertained to the issue of personal jurisdiction as itemized in the letter from the Meyers. Thus, after much ado, there ended up being no dispute as to any material, basic fact.

[¶ 13] Certainly each party put their own spin on the basic facts, but that did not put the basic facts themselves in dispute. Under the circumstances, we find no error in the district court's decision not to hold a formal evidentiary hearing. The purpose of an evidentiary hearing—resolving any factual disputes—had already been accomplished, making such a hearing unnecessary.

### Existence of Personal Jurisdiction

[¶ 14] As stated above, after review of the record, we find the underlying basic facts are not in dispute, only their characterization and application to the law. The question of whether personal jurisdiction can properly be exercised in Wyoming is therefore a question of law to be reviewed de novo. *Cheyenne Publishing,* ¶ 10, 94 P.3d at 469; *Eddy v. Oukrop,* 784 P.2d 610, 612 (Wyo.1989).

[¶ 15] Pursuant to Wyoming's long-arm statute, Wyoming courts are authorized to exercise personal jurisdiction over a defendant on any basis which is not inconsistent with the Wyoming or United States constitutions. Wyo. Stat. Ann. § 5–1–107(a) (LexisNexis 2007). This case involves the question of the existence of personal jurisdiction based on a single act. In such a case, personal jurisdiction exists if three conditions are satisfied: 1) the defendant must purposefully avail himself of the privilege of acting in Wyoming or of causing important consequences in Wyoming; 2) the cause of action must arise from the consequences in Wyoming of the defendant's activities; and 3) the activities of the defendant or the consequences of those activities must have a substantial enough connection with Wyoming to make the exercise of jurisdiction reasonable. *Cheyenne Publishing,* ¶ 11, 94 P.3d at 470; *Amoco Prod. Co. v. EM Nominee Partnership Co.,* 886 P.2d 265, 267 (Wyo.1994); *First Wyoming Bank, N.A., Rawlins v. Trans Mountain Sales and Leasing, Inc.,* 602 P.2d 1219, 1221 (Wyo.1979).

[¶ 16] Our analysis begins and ends with the first factor. "Purposeful availment is a threshold requirement meant to ensure 'that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts.' *O'Bryan* [*v. McDonald,* 952 P.2d 636 (Wyo. 1998) ] at 639 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985))." *Goodwin v. Hall,* 957 P.2d 1299, 1301 (Wyo.1998).

[¶ 17] In this case, we agree with the well-reasoned opinion of the district court, which states in part:

The contacts the Defendants had with the State of Wyoming are *two* in character. First, while in Hawaii, they contracted

with the Plaintiffs, who were Wyoming residents, to design a home to be built in Hawaii. Second, they communicated with the Plaintiffs and the Plaintiffs' contractors by telephone and email who were in Wyoming. There is no evidence that the Defendants came to Wyoming in furtherance of their contractual obligation; nor is there any evidence that they solicited business from the Plaintiffs in Wyoming. The telephone and email communications were not the fruit of any solicitation of the Defendants in Wyoming. Rather the contacts were the product of a contract entered between the parties in Hawaii and the choice of the Plaintiffs to return to Wyoming and to employ Wyoming contractors.

\* \* \* \*

The Defendants' contact with the State of Wyoming through telecommunications are [sic] attenuated at best. These "contacts" came about only because the Plaintiffs chose to return to Wyoming after they entered into a contract with the Defendants and after the Plaintiffs chose to use building contractors who hail from Wyoming. The Defendants had no choice in those matters. The Defendants did not purposefully avail themselves to the privilege of acting in Wyoming and whatever contacts they had with people in Wyoming came about as a result of Plaintiffs' decisions to return to Wyoming and utilized [sic] Wyoming contractors.

[¶ 18] The Meyers argue that, in entering the Agreement, Design Workshop became part of a "design team" based primarily in Wyoming. It is true Design Workshop knew of the possibility of extensive contact with various people in Wyoming when it entered into the Agreement. Indeed, potentially in anticipation of the added expense of such long-distance communications, the Agreement specifically excluded telecommunications and mailings from the general fee due Design Workshop. Instead these expenses were to be reimbursed separately.

 [¶ 19] However, Wyoming "does not acquire [personal] jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation.... [The issue] is resolved in this case by consid-

ering the acts of the [defendant]." *Hanson v. Denckla,* 357 U.S. 235, 254, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Thus, the constitutional right to exercise personal jurisdiction hinges upon a sufficient contact *initiated by the defendant.* Affiliations with Wyoming that involve Design Workshop but are instituted by the Meyers do not meet the constitutional minimum. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Id.* at 253, 78 S.Ct. at 1239–40.

[¶ 20] Instead, the analysis regarding the existence of personal jurisdiction revolves around the quality and nature of Design Workshop's contacts, not the quantity. *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945) (the validity of assertion of personal jurisdiction over a nonconsenting defendant who is not present in the forum depends upon "the quality and nature of [his] activity" in relation to the forum). The fact that Design Workshop knew it would have to communicate with people in Wyoming in order to fulfill its contractual obligations does not qualify as purposeful availment of the privilege of doing business in Wyoming. *See, e.g., Moyer Associates, Inc. v. The Grad Partnership,* 1082 U.S. Dist. LEXIS 15356 (Illinois company may not sue New Jersey business in Illinois for personal services rendered related to a building project in New Jersey absent broader contacts).

[¶ 21] In *Anderson v. Shiflett,* 435 F.2d 1036 (10th Cir.1971), the Tenth Circuit Court of Appeals was faced with a similar situation. An Oklahoma architect, Anderson, entered into a contract with a Texas resident, Shiflett, for the design of a building in Texas. The contract was made in Texas. Anderson attempted to sue Shiflett in federal district court in Oklahoma. The district court dismissed the complaint for lack of personal jurisdiction. In affirming the dismissal, the Tenth Circuit Court of Appeals stated:

We have here a single, isolated transaction in the form of a contract for personal service. The totality of the contacts with Oklahoma was the performance of certain phases of the work at the plaintiff's Okla-

homa City office. Nothing in the record discloses the reasonable anticipation of contractual consequences in Oklahoma. To support jurisdiction, the plaintiff relies on his own unilateral activities. Under the decision in Hanson v. Denckla [sic] this is not enough. To become subject to Oklahoma jurisdiction, the defendant must purposefully avail himself of the privilege of doing business in that state and thereby invoke the benefits and protections of its laws. The record before us does not satisfy this requirement. Instead, it shows no more than the unilateral performance of contracted personal service in the forum. The idea that such performance alone can subject the employer to the jurisdiction of the forum has frightening consequences. *Id.* at 1038. We find the same reasoning pertinent here. In this case, Design Workshop simply did not purposefully avail itself of the privilege of conducting activities in Wyoming.

### Submission to Jurisdiction

█ [¶ 22] Finally, the Meyers argue that Design Workshop voluntarily submitted itself to jurisdiction in Wyoming by requesting attorneys' fees and costs. Courts in other jurisdictions have gone both ways on the issue of whether a party submits to personal jurisdiction by filing a motion for attorneys' fees. *See In re Marriage of Adler*, 271 Ill.App.3d 469, 208 Ill.Dec. 31, 648 N.E.2d 953, 956 (1995) (moving for disbursement of escrow funds and attorneys' fees and costs is a request for affirmative relief and general appearance); *Johnson v. Johnson*, 233 Kan. 198, 662 P.2d 1178, 1182 (1983) (personal jurisdiction established when attorneys' fees motion filed after objecting to court's jurisdiction); *Associate Discount Corp. v. Haviland*, 218 So.2d 59, 61–62 (La.App.1969) (request for attorneys' fees is general appearance because it affirmatively invokes court's jurisdiction). *Compare Heineken v. Heineken*, 683 So.2d 194, 197–98 (Fla.Dist.Ct.App.1996) (attorneys' fees request did not waive defense of personal jurisdiction because it was a defensive action rather than a request for affirmative relief); *Grange Ins. Ass'n v. State*, 110 Wash.2d 752, 757 P.2d 933, 940–41 (1988) (a request for attorneys' fees does not waive an objection to personal jurisdiction because the request is a defensive action and not a request for affirmative relief).

█ [¶ 23] We believe the better approach is to conclude that a motion for attorneys' fees is not an affirmative action that invokes personal jurisdiction. Holding otherwise would allow one contracting party to force the other party to subject itself to a foreign jurisdiction or forgo its contractual right to attorneys' fees. Such a result does not further the parties' intent, as expressed in the contract, that litigation over the contract be undertaken at the risk of having to pay the successful party's attorneys' fees. Such provisions are intended to discourage litigation, not to encourage it in foreign jurisdictions.

### CONCLUSION

[¶ 24] Design Workshop is a Hawaiian firm hired in Hawaii to design a residence to be built in Hawaii. It did not solicit this contract in Wyoming. Its only connection to Wyoming is through the Meyers. Under these circumstances, we find Design Workshop did not purposely avail itself of the privilege of acting in Wyoming. Affirmed.

### APPEAL NUMBER S–07–0224

### DISCUSSION

[¶ 25] In its cross-appeal, Design Workshop appeals the district court's decision denying its request for attorneys' fees and expenses. We review a district court's decision regarding the award of attorneys' fees and costs for abuse of discretion. *Snyder v. Lovercheck*, 992 P.2d 1079, 1084 (Wyo.1999). A court abuses its discretion only when it acts in a manner which exceeds the bounds of reason under the circumstances. The burden is placed upon the party who is attacking the trial court's ruling to establish an abuse of discretion. *Shepard v. Beck*, 2007 WY 53, ¶ 14, 154 P.3d 982, 988 (Wyo.2007).

[¶ 26] In Wyoming, we apply the American rule which holds that each party generally is responsible for his own fees and costs. *See, e.g., Rock Springs Land and Timber,*

*Inc. v. Lore,* 2003 WY 100, ¶ 37, 75 P.3d 614, 628 (Wyo.2003). A prevailing party, however, is generally entitled to be reimbursed for his attorney's fees and costs when an express contractual authorization exists for such an award. *Morrison v. Clay,* 2006 WY 161, ¶ 16, 149 P.3d 696, 702 (Wyo.2006); *Ahearn v. Tri–County Fed. Sav. Bank,* 954 P.2d 1371, 1373 (Wyo.1998); *DeWitt v. Balben,* 718 P.2d 854, 863 (Wyo.1986). There is a proviso:

> While the general rule is that a valid provision for attorney's fees in a [contract] is as much an obligation of the contract as any part of it, the trial court still has discretion in exercising its equitable control to allow only such sum as it thinks reasonable. A trial court in its discretion may properly disallow attorney's fees altogether on the basis that such recovery would be inequitable.

*Combs v. Walters,* 518 P.2d 1254, 1255 (Wyo. 1974) (citing *Graves v. Burch,* 26 Wyo. 192, 200–01, 181 P. 354, 357 (1919)); *Dewey v. Wentland,* 2002 WY 2, ¶ 50, 38 P.3d 402, 420 (Wyo.2002); *McGuire v. Lowery,* 2 P.3d 527, 533–34 (Wyo.2000).

[¶ 27] Design Workshop argues it is contractually entitled to the award on the basis of language in the Agreement and this Court's decision in *Morrison v. Clay,* 2006 WY 161, 149 P.3d 696 (Wyo.2006). The dispute resolution provision of the Agreement provides:

> In the event of a dispute hereunder the parties shall submit the dispute to binding arbitration. Each party shall, at its expense shall [sic] select one arbitrator and the two arbitrators thus selected shall select a third arbitrator, whose expense shall be shared by the parties. The three arbitrators thus selected shall conduct a hearing and render a binding decision as soon as practicable. The losing party in such arbitration shall pay all attorneys [sic] fees and other expenses of the prevailing party.

[¶ 28] The Meyers never attempted arbitration but instead brought a civil suit against Design Workshop. The Meyers attempt to use their action in ignoring the arbitration clause to their advantage. They argue that, since this was not arbitration, the Agreement language does not apply.

[¶ 29] As the parties predicted, the resolution of this issue hinges on our decision in *Morrison.* In *Morrison,* the parties had entered into a settlement agreement. The settlement agreement included an arbitration clause:

> **Any dispute arising out of or relating in any way to this Agreement shall be resolved by a majority of the arbitrators agreed to in this Agreement through final, binding and non-appealable arbitration** in accordance with the arbitration rules of the American Arbitration Association. The prevailing party in any such dispute shall be entitled to recover its reasonable attorneys' fees and costs (including, without limitation, any arbitration fees and costs) from the other party, in addition to any other relief to which the prevailing party may be entitled.

*Morrison,* ¶ 10, 149 P.3d at 699–700 (emphasis in original). In a dispute admittedly "arising out of or relating in any way to" the settlement agreement, the appellant filed suit instead of submitting to arbitration. The appellee requested attorneys' fees pursuant to the arbitration clause in the settlement agreement. This Court upheld the award of such fees:

> [Appellant] reasons that because the district court action was not arbitration, that the agreement does not authorize an award of attorneys' fees by the district court. We reject this reasoning because the obvious intent of the Settlement Agreement was to foreclose future litigation between the parties and to award attorneys' fees to the prevailing party in any dispute involving the Settlement Agreement.

*Id.* at ¶ 17, 149 P.3d at 702. We see no reason to depart from this analysis in this case.

[¶ 30] The Meyers attempt to distinguish *Morrison* by arguing that the language of the arbitration clause in their Agreement is much narrower than that used in *Morrison.* In *Morrison,* arbitration was required for "[a]ny dispute arising out of or relating in any way to this [settlement] Agreement."

The instant Agreement requires arbitration "in the event of any dispute hereunder." Under the facts of this case, we fail to see the significance of the distinction. The Meyers sued exclusively for breach of the Agreement. That certainly qualifies as "any dispute hereunder." The "obvious intent of the [arbitration clause] was to foreclose future litigation between the parties and to award attorneys' fees to the prevailing party in any dispute." *Morrison*, ¶ 17, 149 P.3d at 702. While we have not directly addressed whether a party who successfully resists personal jurisdiction is a "prevailing party" for attorneys' fees purposes, we now so conclude. *See Schaub v. Wilson*, 969 P.2d 552 (Wyo. 1998). Design Workshop, therefore, is contractually entitled to the award of attorneys' fees and other expenses.

[¶ 31] Since the district court denied Design Workshop's motion for attorneys' fees and expenses without discussion, it is possible the district court accepted that Design Workshop was contractually entitled to the award but denied the motion on equitable grounds. If so, we find this decision constitutes an abuse of discretion. The equities in this case clearly favor an award of reasonable attorneys' fees and expenses to Design Workshop.

[¶ 32] To recap, Design Workshop is a Hawaiian company. It entered into a contract to design the Meyers' Hawaiian residence. The contract required arbitration for any disputes arising thereunder. Despite the arbitration clause, and also the lack of any general contacts between Design Workshop and Wyoming, the Meyers decided to bring the instant civil action. This decision was unreasonable under the circumstances. The decision unjustifiably forced Design Workshop into a long-distance defense simply to extricate itself from an unauthorized civil action. We find the Meyers took an untenable position, placing the equities convincingly in favor of Design Workshop.

## CONCLUSION

[¶ 33] The Meyers ignored the arbitration clause in the Agreement at their own peril. The clause was meant to avoid litigation. The Meyers cannot use their attempt to litigate instead of arbitrate as a shield against the attorneys' fees and other expenses provision of the arbitration clause. We reverse the decision of the district court denying attorneys' fees and other expenses and remand for a determination of the reasonable amount to be awarded.

[¶ 34] Further, since the contract allows the award of attorneys' fees and other expenses, the award includes fees and expenses incurred on appeal. *Kinstler v. RTB South Greeley, Ltd., LLC*, 2007 WY 98, ¶ 13, 160 P.3d 1125, 1129 (Wyo.2007); *Cline v. Rocky Mountain, Inc.*, 998 P.2d 946, 953 (Wyo. 2000); *Ahearn*, 954 P.2d at 1373; *DeWitt*, 718 P.2d at 865. We will determine the appropriate sum to be awarded after counsel submits proper documentation.